# BRADFORD v. MARBURY.

1. A charge moved for, cannot be considered abstract, when there is any evidence before the jury to warrant the proposition.
2. If upon a sale of cotton, there is a stipulation to allow a credit for all over $1,000 of the price to be paid, until returns for the cotton can be had from Liverpool, it is an agreement to wait for the residue until, by the ordinary course of trade, a sufficient time elapses for a shipment and returns. A mere gratuitous extension of the time of payment, made after the contract was complete, would not be binding.
3. When a credit is stipulated for, upon a sale of goods, suit cannot be brought before the time agreed on for payment. How far this principle may be modified, when the buyer obtains goods upon a fraudulent representation that paper given for them is good, when it is worthless; or when the buyer obtains possession of goods on condition of giving security, and afterwards refuses it, *quere*.
4. When testimony is too indefinite, and inconclusive, to warrant the court in saying that one thing or another is proved by it, it should refuse a charge assuming that certain facts are established.
5. When goods are delivered to a warehouseman, or carrier, indicated by the buyer, a delivery to the warehouseman, or carrier, is a delivery to the buyer, and it is at his risk when delivered, without notice, unless by the contract of the parties, he is to be notified of the fact of delivery.
6. A delivery to a warehouseman will be complete, although the seller should take the receipt in his own name, unless his intention in taking the receipt in his own name, was to preserve the right of property in himself.
7. When property is delivered to a warehouseman, indicated by the buyer, the right of property will vest in him, though the warehouseman may have a *lien* on the goods for his charges. Whether such a *lien* would in any case prevent the general property from vesting in the buyer, if the requisites of the sale were complete, *quere*.

Error to the Circuit Court of Coosa.

Assumpsit by Marbury against Bradford, for goods sold and delivered.

At the trial, a witness for the plaintiff testified, that in September or October, 1844, he was present, when a conversation was had between the plaintiff and defendant, respect-

ing the purchase and sale of the plaintiff's crop of cotton, of that year. The defendant said, "I'll give you six and a half cents a pound for all the cotton you pick out by the 25th December." To this the plaintiff assented. The defendant then said, "deliver it to Hatchett," meaning the witness, who was known to both the parties as one of the partners in a cotton warehouse in Wetumpka, doing business under the firm of Hatchett & Bro. Nothing more was said about either the time of payment or the delivery of the cotton. It was proved the plaintiff's crop, amounting to 100 bales, was all picked out before the 25th December, 1844, and was delivered in good order, at the warehouse of Hatchett & Bro. except five loads of five or six bales each, before Christmas, and these five loads were delivered in January, 1845, the last load on the 18th of that month, and weighed. The aggregate weight was 48,520 pounds. The bales were delivered unmarked. The warehouse receipts were made out in the name of the plaintiff, and delivered to his wagoner—they came to his hands and were never delivered to defendant. These receipts were given in the following form:

| Marks. | No. | Weight. | Ropes. | |
|--------|-----|---------|--------|---|
| L. M. | 1 | 510 | 6 | Received from L. Marbury, six bales cotton, marked as per margin, and subject to order on this receipt, on paying all expenses and advances. |
| | 2 | 566 | 6 | |
| | 3 | 508 | 6 | |
| | 4 | 506 | 6 | |
| | 5 | 484 | 6 | |
| | 6 | 564 | 6 | |

HATCHETT & BRO.

*Wetumpka, 25 Nov.* 1844.

It was proved to be the plaintiff's custom to brand his cotton with his name, and that his crop for several years previous to that of 1844 had been so branded.

Several other witnesses testified they had heard the defendant say, he had bought plaintiff's crop for that year, but gave no particulars of the terms of the contract. The witness first spoken of, also testified he was at the defendant's house, on the night of the 25th December, '44, and was told by him to ship the cotton when it should all be delivered

but he countermanded the order, on the suggestion of witness that he had better not ship until the defendant could go down with it himself.

It was proved the warehouse of Hatchett & Bro. with all the cotton delivered there by the plaintiff, was destroyed by fire, the 29th January, 1845.

Another witness for the plaintiff testified, he thought the cotton delivered was entered on the warehouse books in the name of the plaintiff, but that the usage was not uniform to make the books correspond with the receipts—that the cotton was always held liable to the warehouse charges; and the shipper of cotton looked to for payment of them in every case, unless there was a special agreement to the contrary— that no charges had been paid on the cotton in controversy. He and others testified, that it was customary at Wetumpka to transfer cotton in the warehouse, by a transfer of the receipt; but that they sometimes turned out cotton on the receipts, sometimes by written order, and sometimes, when they had confidence, on a verbal order.

Another witness called by the plaintiff, said he was at the house of the defendant, the 27th December, '44, when both the parties were there. In reply to a question by the plaintiff's counsel, he said, "I cannot say what was said about the delivery of the cotton;" when cross-examined he said "plaintiff said to defendant, that he should have to employ an extra force unless he could get longer time for the delivery of the cotton," and remarked to the defendant, that the longer the time the better for him, "as you will have the less storage to pay." The remark of the defendant in reply was, "that he could have longer time—that it was an immaterial matter, but he should not hold himself responsible for storage until the receipts were delivered." Witness was asked if plaintiff gave any assent to this, or made any objection, and answered he did not remember. During this conversation the parties seemed friendly. Defendant, in the same conversation, said he wanted the plaintiff to give him timely notice of the delivery of the cotton. Witness did not recollect what response, if any, was made by the plaintiff to this remark.

It was also proved, that sometime before Christmas, the

Bradford v. Marbury.

defendant paid to the plaintiff $582 on account of the purchase of this cotton, and that the plaintiff, in conversation, sometime after the date of the contract as proved by the first witness, said defendant was to pay him $1,000 down, and and that the remainder was to be waited for until the defendant could ship to Liverpool and get returns. It was also proved, that after the cotton was burned, the defendant denied that the loss fell on him, and refused payment, as not having been his, duly delivered, and this was before suit was instituted.

It was also in proof, that the parties lived within three miles of each other, and distant 28 or thirty miles from Wetumpka. This was all the proof in the cause.

The court charged the jury, " that the main controversy was, as to the true nature and extent of the contract between the parties, in respect to the sale of the cotton. The plaintiff insists that his contract was to deliver the cotton at Hatchett's warehouse—the defendant, that the delivery was not complete until the warehouse receipts were delivered. The jury should determine which is right. If the contract was for the cotton to be delivered at the warehouse, and it was so delivered, the loss must fall on the defendant. If the contract was, the cotton was not to be considered as delivered until the warehouse receipts were delivered, and they were not delivered, then it must fall on the plaintiff.   The principle of law which governs the case is this—if one makes a contract for the purchase of personal property, and there remains some material act to be done by the seller to complete the contract, and a loss by fire occurs before the act is done, the loss falls on the seller.   If every thing has been done by the seller which he contracted to do, the loss falls on the buyer.   Did the plaintiff contract to deliver the warehouse receipts before the delivery of the cotton was to be esteemed complete ?   If so, and they were not delivered, the verdict should be for the defendant.   On the other hand, was the contract to deliver the cotton at Hatchett's warehouse ?   If so, and it was thus delivered, the verdict should be for the plaintiff."

The defendant requested the court to charge the jury—

1. That if the plaintiff agreed to wait with the defendant for all but $1,000 of the purchase money until he could ship

to Liverpool and get returns, and that reasonable time had not elapsed for such shipment and returns before the suit was brought, then they must find for the defendant, for all except $1,000 and interest, deducting the payment of $582.

2. That if by the first contract the cotton was to have been delivered at a particular time or place, and it was afterwards modified by giving the plaintiff further time for delivery, without specifying the particular time, then in order to constitute a delivery of the cotton on the part of the plaintiff, he should give notice to the defendant of the compliance on his part with the contract, before the property in the cotton would pass to the defendant, and before a right of action would accrue.

3. That if the cotton was burned sometime after it was stored with the warehouseman, under a contract stipulating no particular time of delivery, and was burned before notice given to defendant, of its being stored and delivered according to contract, then there was no delivery of the cotton to the defendant.

4. That if the warehouse charges of the cotton, or any part of it, was due from the plaintiff when burned, the cotton was not in a deliverable condition at that time, and the title did not pass to the defendant, and the plaintiff is not entitled to recover.

5. If by the first contract, the cotton was to be delivered at Wetumpka, at a particular time, and it was afterwards modified by an agreement giving the plaintiff further time to deliver the cotton, without specifying any particular time— and if it was further agreed, the defendant should have notice when the cotton was delivered, then to make a delivery, it should appear the plaintiff gave notice to the defendant, within a reasonable time, of a compliance on his part with the contract, before the property would pass to the defendant, and before the plaintiff would be entitled to recover.

6. That if the time for the delivery of the cotton was extended by the consent of the defendant, and upon that extension he required the plaintiff should give him notice of the delivery of the cotton, and if the plaintiff assented to do so, and if the parties lived within three or four miles of each oth-

er, and if the last part of the plaintiff's cotton was delivered on the 17th January, and notice was not given to the defendant, of the delivery, previous to the 27th, when the cotton was burned, then that this would not be giving notice to the defendant.

7. That if by the custom of merchants, in Wetumpka, a warehouse-keeper has a lien on cotton stored, for the charges and storage, and if the warehousemen were asserting their right to charges for storage on this cotton, and if by the contract defendant was not to pay storage fees before the plaintiff should deliver the receipts, then the cotton, so long as the charges of the warehousemen, on the cotton, anterior to the delivery of the receipts remained, would not be in a deliverable state, and until it was relieved from this incumbrance, the title to the cotton did not pass to the defendant, and was at plaintiff's risk.

8. That if by the terms of the contract the defendant was to have credit on a part of the purchase money, until he should receive a return of an account sales from Liverpool, and if an account of sales could not have been received from thence before April or May, and the plaintiff could not legally commence his action for such sum as was to be then paid, before the expiration of the credit, although the cotton was never shipped, owing to its destruction.

9. That if the plaintiff, on the 27th December, 1844, informed the defendant he could not deliver the cotton agreeably to the terms of his contract, and thereupon the defendant assented to an extension of the time for its delivery, but said to the plaintiff, you must give me timely notice of its delivery, to which the plaintiff made no objection or reply, then this would amount to an assent on the part of the plaintiff to give the notice, and if he failed to do so, in a reasonable time after its delivery, the title would not pass to the defendant, and the plaintiff could not sustain this action.

10. That if the plaintiff informed the defendant he would not be able to deliver the cotton agreeably to contract, without the application of an extra force, and said to the defendant a delay of the delivery would be an advantage to him, as he would have less storage to pay, and if the defendant assented to an extension of the time for delivery of the cotton,

but said to the plaintiff, he the defendant, was not responsible for storage until the cotton receipts were delivered, and if the plaintiff made no objection or reply to this statement, of the terms of the contract, then this would amount to an assent on the part of the plaintiff to the terms, as stated by the defendant.

11. That if there were charges for storage on the cotton, antecedent to the fulfilment on the part of the contract of the plaintiff, and if the warehouseman held the cotton before it was burned, subject to this charge, and if these charges existed at the time the cotton was burned, then there remained something to be done by the plaintiff, to free the cotton from this incumbrance, and until this was done, the cotton was at the risk of the plaintiff, and he could not recover in this action.

These charges were severally refused, and errors are assigned here upon the refusal.

MORRIS and MARTIN, for the plaintiffs in error.
STORRS and ELMORE, contra.

GOLDTHWAITE, J.—1. The defendant does not question the correctness of the general instruction, on which the cause was submitted to the jury, so far as that goes, but insists, he was entitled, from the proof to make the several points presented by his requests for distinct charges. To this the plaintiff answers, without admitting the correctness of the propositions advanced, that most, if not all of these, were properly refused, on the ground that they are abstract, in other terms, not called for by the evidence. If the case rested alone on the testimony of the first witness, there would be no room for discussion, as that makes out a naked sale, of which at most there would be a full performance on the part of the plaintiff by delivery; but the defendant insists this contract was essentially modified by the conversation between the parties on the 27th December, as well as that the admissions of the plaintiff indicate that the sale itself was made with a stipulation, that credit should be given for a portion of the price, until returns were or could be received from Liverpool. Whether the contract for sale was one for a credit, or whether it was modified in any material manner

by the conversation of which evidence was given, or whether the plaintiff assented to the modifications which it is insisted the defendant proposed as the equivalent for the delay in the delivery of the cotton, or whether, in point of fact, there was any delay, or whether this conversation applied to the whole of the cotton, or only the portion then not delivered, were all questions for the consideration and determination of the jury. For the court to undertake to pronounce that none, or which, or that any of these matters, were or were not established, was a judgment upon the weight of the evidence, which it was incompetent to give. It is at all times a question of much delicacy, to refuse a legal charge on the ground that it is not supported by evidence, but to do so when there is any evidence before the jury to warrant the proposition, is clearly erroneous. [Wiswall v. Ross, 4 Porter, 231; Harrell v. Floyd, 3 Ala. Rep. 16.] We think the objections to the charges, on account of their being abstract, cannot be sustained.

2. We shall now proceed to examine the several legal propositions which the different requests for instruction contain, but in doing this, shall endeavor to group them into classes. The first and eighth are sufficiently similar to be considered together. If the contract was to allow the defendant a credit, for all but $1,000 of the price, until returns for the cotton could be had from Liverpool, it cannot, we think, be disputed that this must be construed as a stipulation to wait until, by the ordinary course of trade, a sufficient time had elapsed for a shipment and returns. And in this light the requests seem to consider it. If the admissions of the plaintiff connected themselves with the contract of sale, so that the credit formed a part of it, then there can be little question that a sufficient time had not elapsed between the delivery of the cotton and the 14th of March, 1845, (at which time the suit was instituted), for it to have been shipped and returns made. If, on the other hand, it was a gratuitous extension of delay, made after the contract was otherwise complete, there can be no pretence to say the suit is affected by it. [Ross. on Vend. 59; Stedman v. Gooch, 1 Esp. 5.] Which of these, or what was the proper inference from the proof, as we have before said, was determinable by the jury.

3. But the plaintiff contends that the denial by the defendant, that he was in any way liable to pay for the cotton after its destruction, relieved him from the necessity of waiting until the expiration of the credit, if one, in point of fact, was a part of the contract, to commence a suit to ascertain his rights. It must be confessed this proposition is deserving of great consideration. If it was conceded, that every seller upon credit is justly entitled to demand from the buyer an acceptance, which is the general course of trade in some commercial places, (Ross. on Vend. 53) or at least a sale note, or other memorandum in writing, ascertaining the terms of the contract, it seems well settled in England, and in the courts of the Union, that a neglect or refusal to do so, will not entitle the seller to an immediate action for goods sold and delivered, though it seems he may do so on the special contract. [Musser v. Price, 4 East, 147; Dutton v. Salomonser, 3 B. & P. 582; Ferguson v. Carrington, 9 B. & C. 59; Thompson v. Morriss, 2 Murphy, 248; Allen v. Ford, 19 Pick. 217.] There is a class of decisions which hold, that where the buyer has obtained goods upon a credit by a fraudulent representation that paper given for them is good, which turns out to be otherwise, that then the contract may be repudiated, and a new one implied to pay at once for the goods. [Bank v. Gore, 15 Mass. 79; Wilson v. Force, 6 John. 110.] So it has been held, when the buyer obtained possession of the goods, where the sale was on condition to give security, and he afterwards refused to give it, the seller might treat the sale as absolute, and sue immediately. [Corlies v. Gardner, 2 Hall, 345.] It should be remarked, however, that this last decision seems in direct conflict with Allen v. Ford, before cited, and many of the English decisions, unless there is a distinction between the refusal, and a neglect to give the security. The reason of the decisions is said to be, that the seller, by bringing the action for goods sold, &c., considers the contract of sale as existing, and that the law will not imply a contract where the parties have expressed their own terms. [Strutt v. Smith, 1 Crump S. C. Mus. & R. 315.] Assuming, however, the decision in Corlies v. Gardner, as declaring the true rule, and assimilating the refusal to give the security contracted for to a case of fraud, it will be evi-

dent this case is not within the principle. If the mere de-
nial of liability will authorize a suit before the maturity of
the credit, it would bring every case of disputed contract at
once to an issue, independent of the time fixed by the parties
for its performance. We are not prepared to say that such a
rule would be a bad one, but it is certain it has no sanction
in authority. We are, then, constrained to say, that if a cre-
dit was stipulated for, there could be no recovery except for
the sum due according to the contract when the suit was
commenced. In our judgment, there was no valid reason to
refuse the charges to which this paragraph has reference.

4. The ninth request asserts the proposition, that the
omission of the plaintiff to reply to the remark of the defend-
ant, that timely notice, &c. must be given him of the deli-
very of the cotton, is to be construed as the plaintiff's assent
to this as a condition. We think this cannot be sustained:
though we are not prepared to say this *must* be considered as
an assent, it is possible the jury *might* so consider it. It may
be, however, that the plaintiff omitted to press his request
further for delay, from the conviction it would be unneces-
sary, as only thirty bales were then undelivered. The ob-
jection to the request is, that the evidence bearing on this
point is too indefinite and inconclusive to warrant the court
in saying that one thing or another was proved by it. It is
quite possible the whole of the cotton was delivered within
the time contemplated by the parties when the contract was
made, and if so, the just inference would be, that the propo-
sition for delay was abandoned, and it might be otherwise if
it was not so delivered. Nor is the hypothesis improbable,
that neither party expected any consequences to flow from
this conversation, unless there was a delay in the delivery,
and then only as to the matter of storage.

5. The second, third, fifth and sixth requests are predica-
ted on the assumption that notice of the delivery of the cot-
ton was essential to charge the plaintiff, either under the con-
tract as made in the first instance, or if modified by the con-
versation between the parties on the 27th December, so as to
interpose the condition that notice should be given the plain-
tiff. If the contract, as testified by the first witness, was,

67

that the cotton should be delivered to the warehouseman indicated by the defendant, it is, in our judgment, a matter of no importance whether he was indicated as a warehouseman, or as the agent of the defendant. The general rule with respect to consignments to third persons, so as to place the property at the risk of the buyer, is, that notice shall be given, (Goom v. Jackson, 5 Esp. 112,) but where the carrier or warehouseman is named or indicated by the buyer, a delivery to the carrier, &c. is a delivery to the buyer. [Dawes v. Peck, 8 Term, 330; Cook v. Ludlow, 2 New R. 119.] If, however, the contract was in point of fact so modified afterwards, as to make it a condition that the plaintiff should give timely notice to the defendant of the delivery to the warehouseman, then the latter has the right to insist on this, as upon any term of the contract. We have nothing to do with the improbability that the jury could come to the conclusion that such a condition was made, either as to the whole of the cotton, or to that part not then delivered. It is sufficient to warrant the defendant in asking the charges involving this point, that there was evidence on it for them to weigh and decide upon.

6. In this connection, we may properly advert to an argument made in this cause, though the question does not seem involved in any of the requests, that the warehouse receipts being in the name of the plaintiff, there was no delivery to the defendant. Without entering upon the question, whether such receipts are negotiable, so as to pass the legal title by an assignment, we think it very clear that no question of law, decisive of the rights of the parties, arises out of this circumstance. The proper matter for the jury to ascertain was, whether the delivery of the cotton to the warehouseman was made on account of the defendant, or did the plaintiff cause the receipts to be taken to himself, to preserve his right of property? In this view, the concurrence, or the want of it, by the plaintiff, in requiring the receipts to be thus taken —the assumpsion by the defendant of the right to ship it— the payment of a part of the price, &c. were all facts bearing on the determination, which, in our opinion, was one solely for the jury.

7. All the other requests relate more or less to the question,

how far charges for storage, if any were due from the plaintiff, and constituting a lien on the cotton, prevented the title from passing to the defendant, until they were discharged. We think this is a question which the defendant is not permitted to raise, even if it is admitted the cottons were subject to liens, for charges which the plaintiff was bound to pay. The warehouseman was indicated by the defendant himself, and if charges accrued, he must have known of the general right of lien, and the title passed to him notwithstanding the lien. In Philemon v. Curry, 1 Camp. 513, and King v. Meredith, 2 Camp. 639, it was held that a lien for storage or transportation, to be paid by the plaintiff, did not prevent the property from passing when the other essentials of delivery were complete. To the same effect is Taworth v. Moore, 9 Pick. 347, and the cases cited by defendant, seem to contain nothing opposed to these decisions. Indeed, a different doctrine would work incalculable mischiefs, as there is scarcely any bulky article of commerce which is not at all times under some sort of lien, either for storage or transportation.

We come, then, to the conclusion, that the charges in this connection were properly refused; but independent of general principles, there is abundant proof in the cause to warrant the inference, that the warehousemen had waived any claim to their specific lien.

The court, however, having erred in considering there was not sufficient proof to warrant the charges which we have endeavored to show were unexceptionable as legal propositions, the judgment is reversed, and the cause remanded.