## LYMAN CHAPIN v. SAMUEL B. POTTER and ISRAEL POTTER.

It is the duty of the court to determine as to the validity and effect of a contract, whether written or parol, the terms of which are not disputed; but where the evidence in respect to its terms is conflicting or doubtful, and a question arises as to the intent of the parties to it, it must be submitted to the jury for their determination, under proper instructions from the court upon the law governing the case.

In the case of a contract for the sale and delivery of goods, it is never to be presumed, in the absence of an express agreement, that payment is to be made until the delivery of the goods purchased.

C. agreed to sell R. a lot of soap and candles, agreeing to take as part payment, in exchange, a lot of damaged candles. R. pointed out the damaged candles to C.'s clerk, and told him to send the soap and take the candles away; but before the soap had been all delivered, or the candles had been taken by C., R. failed and made an assignment.

*Held,* that the title to the candles did not pass to C., but remained in R. until the delivery of the soap was completed, and that in an action by C. to recover the value of the damaged candles from P., who purchased them from R.'s assignee, the complaint was properly dismissed.

*Per* DALY, J., *dissenting.*—Where a part payment of the purchase money is relied upon, to take a parol contract for the sale of· goods out of the statute of frauds, the payment must be made at the time when the contract was entered into; but a delivery and acceptance of a part of the goods takes the case out of the statute, although it takes place after the parties have agreed to the conditions of the sale.

What evidence of a delivery is sufficient to take a case out of the statute of frauds, considered.

It is a general rule, in the case of a sale of personal property, that if the property remain in the possession of the vendor, and anything remain to be done, such as weighing, measuring and the like, the title to the goods does not pass.

But it is otherwise if it was the intention of the parties that it should pass. Where, in such case, there is any question as to the intention, it should be left to the jury.

APPEAL by plaintiff from a judgment dismissing the complaint. This was an action to recover the value of a lot of candles, alleged to belong to the plaintiff and to be unjustly detained from him by the defendant. The cause was tried before Judge Brady and a jury, and the complaint dismissed. The facts are fully stated in the opinion of Judge Daly.

*Rufus J. Bell*, for the appellant.

*William Boies*, for the respondents.

DALY, J.—This is an action to recover the value of twenty-three boxes of candles, alleged to be wrongfully detained from the plaintiff by the defendants, in which the plaintiff was nonsuited upon the following state of facts :

The clerk of the plaintiff called upon one Russell to solicit an order for soap and candles. Russell agreed to take twenty-five boxes of soap and fifty boxes of candles, upon condition that the plaintiff would take in exchange all the damaged candles which Russell then had in his store. The clerk consulted the plaintiff, and he accepted the proposition; and, a day or two after, the clerk called upon Russell, and informed him that the plaintiff agreed to the terms proposed; whereupon Russell ordered, at the market price, twenty-five boxes of soap and fifty boxes of candles; and the clerk, on the part of the plaintiff, agreed to

take, in part pay, all the stock of damaged candles that Russell had, at the rate of 13½ cents per pound. After the contract was made, Russell and the plaintiff's clerk went and examined an open box of candles placed near the door of the office, after which Russell took the clerk to the back part of the store, where a lot of candles were piled up together, and, showing them to him, said, " Here is the lot of candles; send down some soap, and take the candles away." Before this, Russell had told the clerk that there were from fifteen to twenty-five boxes. Candles are sold by the marks of the number of pounds on the outside of the boxes. The terms of the sale to Russell were cash for the difference upon the exchange. He was to pay 14¾ cents per pound for the candles; the soap was to be at the market price.

The following day the clerk entered the order given by Russell on the plaintiff's order book, and a day or two afterwards fifteen boxes of soap were sent to Russell. In a few days a load of candles was sent; but Russell in the meanwhile having made an assignment, his assignee, Mr. Dimmick, refused to receive them, and they were brought back by the carman. The plaintiff's clerk then called at Russell's store, and after being informed by Dimmick of the fact of the assignment, the clerk demanded the damaged candles purchased of Russell, or that the soap which the plaintiff had delivered to Russell should be returned. Dimmick said he would take legal advice, and the clerk having called the next day, Dimmick told him that he had sold the soap and had also sold the candles, to go into the country. The clerk afterwards saw Mr. Potter, one of the defendants, who told him that he had bought a lot of candles from Dimmick, at a bargain. The clerk then stated to him the circumstances, and Potter said it was hard for the plaintiff; that he had not paid Dimmick for the candles, and also that it made no difference to the defendants how the suit terminated. The complaint alleged that twenty-three boxes of candles, slightly damaged, were delivered by Dimmick to the defendants, containing 1,177 pounds, amounting, at 13½ cents per pound, to $158.89; which was not denied by the answer.

The first question is, whether the contract for the sale or exchange of these twenty-three boxes of candles for the goods agreed to be, and in part delivered by the plaintiff, was void by the statute of frauds. It is alleged to be void because there was no delivery, in part performance, at the time the contract was entered into, the soap having been delivered a day or two after Russell and the clerk had agreed upon the terms of the sale or exchange; and we are referred to the case of *Seymour* v. *Davis* (2 Sandf. S. C. 239), but the decision in that case, that a delivery and acceptance in part performance of an agreement for the sale of goods must be made *at the time of the sale*, was founded upon an obvious misapprehension of the terms of the statute. The provision in the statute, respecting time, refers to the payment of part of the purchase money, and not to the receipt and acceptance of part of the goods. Where a payment of part of the purchase money is relied upon to take the case out of the statute, the payment must be made at the time when the contract is entered into; but it has been settled, in *McKnight* v. *Dunlop* (1 Seld. 537), by the Court of Appeals, if it was ever doubtful, that a delivery and acceptance of part of the goods takes the case out of the statute and renders the contract binding, though it takes place after the parties have agreed upon the conditions of the sale. "The oral contract," says Paige, J., in *McKnight* v. *Dunlop*, "may be considered good as a proposition, and the subsequent delivery of the whole or of a part of the goods, as an acceptance of the proposition and the final conclusion of a valid contract;" and it was accordingly held, in that case, that the delivery and acceptance of part of the goods, several months after the making of the verbal agreement, was a sufficient compliance with the statute; and even before that decision, it was held by the Supreme Court, in *Sprague* v. *Blake* (20 Wendell, 63), that a part delivery need not, by the terms of the statute, be made when the agreement is entered into. "An oral agreement," says the court, in *Sprague* v. *Blake*, "may stand for a mutually agreed proposition, and, unless revoked, the subsequent acceptance of part of the goods, which were the subject of the oral negotiation,

will make it binding." In this case there was a delivery and acceptance of a part of the soap, a day or two after Russell and the plaintiff's clerk had agreed upon the terms of exchange and sale, which rendered the contract binding.

But I think the court below erred in granting a nonsuit. Before a nonsuit can be directed, there must be no doubt in respect to what is proved by the evidence. The evidence must not only be taken to be true, but it must be so clear and conclusive, in respect to the facts upon which the conclusions of law are based, that it is in the power of. the court to draw every inference which a jury might draw. *Smyth* v. *Craig*, 3 Watts & Serg. 18. If it is not of that character, the case must be submitted to the jury under proper instructions from the court in respect to the law. This is especially so where no written agreement or contract is entered into, and a question arises as to the intent of the parties, to be gathered from their acts and declarations. Where the intent follows as the legal and logical conclusion from their acts, it may be passed upon by the court; but where, upon the evidence, it is so uncertain or doubtful as to justify a jury in finding either way, then it is not in the province of the court to pass upon the question, but the case must be submitted to the jury.

Such, I think, was the case here. The agreement was in part for the exchange of commodities, or, rather, it was an agreement for the sale of goods, payment for which was to be made partly in goods; the whole amount, or quantity of which, was not ascertained, but which was to be taken at a certain rate per pound, and partly in cash. If the parties had put their agreement in writing, and nothing more was expressed, but that the plaintiff was to deliver a certain quantity of soap and candles at a stipulated price, to be paid for partly in damaged candles and partly in cash, the construction of it, as an executory contract, would be, that the delivery of the damaged candles and the cash payment was to be contemporaneous with the delivery of the soap and candles the plaintiff had agreed to sell. But it may have been the intention of the parties here, that the damaged candles were to be delivered at once. They were pointed out, piled up

together in the back part of the store, to the plaintiff's clerk, by Russell, who said, " Here is the lot of candles, send down some soap, and take the candles away." If this was not consenting that they might be taken away at once, and, as such, equivalent to a delivery at common law, it was certainly consenting that the plaintiff might take them away if he sent down some soap, and as he did thereafter deliver a part of the soap that had been ordered, thereby rendering the agreement valid and binding, he acquired, in pursuance of Russell's consent, the right to take the lot of damaged candles away.

It is urged, however, that there could be no delivery of the damaged candles, as the entire quantity had not been ascertained ; that though separated and distinguished as a lot, the number of pounds contained in each box had not been ascertained, and that until that was done, and the whole number of pounds known, the delivery was not complete. It is, undoubtedly, the general rule in the sale of goods, that, while anything remains to be done respecting the goods between buyer and seller, the title remains in the vendor. That where any operation of weight, measurement, counting or the like, remains to be performed in order to ascertain the price, the quantity, or the particular commodity to be delivered, and to put it into a deliverable state, the contract is incomplete until such operation is performed. Brown on Sales, 44 ; *Macomber* v. *Parker*, 13 Pick. 183. This rule is founded upon the presumption of law, that it is not the intention of either buyer or seller that the title to the property should pass while something remains to be done ; that they do not intend to treat it as delivered, until the vendor has done all that it is essential he should do, and nothing remains but for the vendee to take possession. But this presumption must give way, and the rule founded upon it, where it appears from the acts and declarations of parties that they intended otherwise. Story on Contracts, 800, *b*, and cases there collected. The authorities, moreover, are by no means agreed as to the precise extent or application to be given to this rule. Thus, it was held in *Williams* v. *Allen* (10 Humph. 339), that though the subject

matter of the contract be clearly ascertained, yet, if the price cannot be calculated until the parties have weighed the goods, no property therein passes to the buyer until such act be done, which is in effect the present case, for the number of boxes of damaged candles, or the number of pounds in each box had not been ascertained, and until that was known, and the value computed at the rate agreed upon per pound, the amount was not ascertained that Russell was to pay in cash. So in *Dixon* v. *Myers* (7 Grattan, 243), it was held that if the amount of the purchase money remains yet to be ascertained by the enumeration, measurement or weighing of the article, the general rule is, that the property does not pass to the buyer, but still remains at the risk of the seller. But Mr. Justice Strong lays down the rule very differently in *Crofort* v. *Bennett*, 2 Comst. 260. He says: " If the goods sold are clearly identified, then, although it may be necessary to number, weigh or measure them, in order to ascertain the price of the whole, at a rate agreed upon between the parties, the title will pass. If a flock of sheep is sold at so much per head, and it is agreed that they shall be counted after the sale, in order to determine the entire price of the whole, the sale is valid and complete. But if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated, and their identity thus ascertained and determined. The distinction," he says, " in all these cases, does not depend so much upon what is to be done, as upon the object which is to be effected by it. If that is specification, the property is not changed ; if it is merely to ascertain the total value at designated rates, the change of title is effected." The point was not directly involved in the decision of *Crofort* v. *Bennett*, and the rule there laid down by Mr. Justice Strong can scarcely be regarded as in consonance with a subsequent decision of the Court of Appeals in *Joyce* v. *Adams*, 4 Seld. 291.

But whether the rule as stated by Justice Strong be correct or not, the title to the property will pass, though it be left in the possession of the vendor, and though something may remain to be done, as weighing or measuring, if such was the

understanding of the parties. *McCandlish* v. *Newman*, 22 Penn. 465. *Barret* v. *Goddard*, 3 Mason, 107; *Macomber* v. *Parker*, 13 Pick. 182; *Chaplin* v. *Rogers*, 1 East. 192. Story on Contracts, 800, *b*, for the general rule above referred to, is applied only as an interpretation of the intention of the parties, in the absence of evidence of any understanding between them indicating a different intention. *Stone* v. *Peacock*, 35 Maine, 385. If it appear, therefore, that they intended that the property should be regarded as delivered, and that the title to it should pass, the law gives effect to their intention, and the title passes; and if what they intended is doubtful or uncertain, under all the circumstances, even though there be no contradiction in the testimony, the question of intent must be submitted to the jury, and they must determine it as a question of fact. *Lester* v. *McDowell*, 18 Penn. 95; *Clemens* v. *Barr*, 7 Barr, 263; *Blenkinsop* v. *Clayton*, 7 Taunt. 597; *Phillips* v. *Bristol*, 2 B. & C. 511; *Baines* v. *Jevons*, 7 Car. & Pay. 288; Story on Contracts, *supra*. The rule is thus stated in *Hondlette* v. *Tallman*, (14 Maine [2 Shepley], 400): "When the law can pronounce, upon a state of facts, that there is or is not a delivery and acceptance, it is a question of law to be decided by the court; but where there may be uncertainty or difficulty in determining the true intent of the parties respecting delivery and acceptance from the facts proved, the question is to be decided by the jury." So it is said in *Riddle* v. *Varnum* (20 Pick. 280): "If something remains to be done, and there is no evidence tending to show that it was the intention of the parties to make an absolute and complete sale, the property does not pass to the vendee; but where the property is in a state ready for delivery, and the payment of money or the giving of security is not a condition precedent, it may well be the understanding of the parties that a sale is perfected, and that the interest passes to the vendee although the weight or measure of the article sold remains yet to be ascertained. Such a case presents a question of the intention of the parties. The party affirming the sale must satisfy the jury that it was intended to be an absolute transfer, and that all that remained to be done was merely for the pur-

pose of ascertaining the price of the article sold, at the rate agreed upon."

In this case, the subject matter of the contract (the damaged candles) was identified and pointed out as a distinct and separate lot; and though the number of pounds had not been ascertained, and though that was essential for the purpose of ascertaining what amount was to be paid by Russell in cash, still it may have been the intention of the parties that they should be regarded as delivered to the plaintiff when he should deliver some soap in part performance of his part of the contract; that he should then be at liberty to take them away, allowing Russell for the number of pounds, at the rate agreed upon. The quantity contained was a mere matter of computation, as candles are sold by the number of pounds marked upon the outside of the boxes. If the plaintiff had, in conformity with Russell's request, taken them away without ascertaining the quantity, there could be no doubt but that the property would have been in him, as the price was agreed upon, and the ascertaining of the quantity was merely a matter of calculation. *Scott* v. *Wills*, 6 W. & S. 366. It may well, therefore, have been the understanding of the parties, after the terms and conditions of the contract were finally settled, that he was at liberty to take them away whenever he thought proper. Unless the court could say that it was deducible, as a conclusion of fact, from the evidence, that the parties did not intend that the candles should be taken away, or that the title to them should not vest in the plaintiff, until the quantity was ascertained, it could not take the case from the jury. If it was not in evidence that Russell directed the plaintiff's clerk to take them away, the court perhaps would be justified in coming to that conclusion; but, with that evidence in the case, the question of intent became at least too uncertain and doubtful to entitle the court to draw a positive conclusion respecting it. It was said, in *Bradbury* v. *Marbury* (12 Ala. 520), that " Where testimony is too indefinite and inconclusive to warrant the court in saying that one thing or another is proved by it, the question must be left to the jury;" and that, in my judgment, is the case

here. If this case had been submitted to the jury, and they had found for the plaintiff upon this evidence, I do not see how we could have disturbed their verdict. If they drew the conclusion that Russell intended, by what he said, that the plaintiff was at liberty to take the damaged candles away whenever he sent down some soap, giving Russell credit, at the rate agreed upon, for the number of pounds he, the plaintiff, should find marked upon the boxes, could we say that there was no foundation in the evidence for such a conclusion? A jury might infer, from the explicit terms in which Russell directed the clerk to take the candles away, that he had entire confidence in the accuracy, honesty and integrity of the plaintiff, and was therefore willing to trust him and take his report of the quantity, and could we say that it would be erroneous in the jury to come to such a conclusion? But, without pursuing the illustration, it was at least doubtful, upon the evidence, what the parties intended. There was some evidence from which it might be inferred that Russell regarded the lot of damaged candles as transferred to the plaintiff, when he was advised that the terms and conditions upon which he had agreed to purchase from the plaintiff had been accepted; and the proper course, therefore, was to let the jury pass upon the question.

If the title to the property was in the plaintiff, it could not be divested by the sale to the defendants. *Williams* v. *Marsh*, 11 Wend. 80; *Covil* v. *Hill*, 4 Denio, 323. Russell's assignee could transfer no title; and if the candles purchased by the defendants were the damaged candles embraced in Russell's contract with the plaintiff, which was a question of fact to be submitted to a jury, the plaintiff could maintain the action.

INGRAHAM, FIRST JUDGE.—I cannot concur in the proposition that, upon proof of a contract, whether in writing or by parol, where the terms of such contract are not varied by the testimony, it becomes necessary to submit such contract to the jury for interpretation as to the intentions of the parties. If there is no dispute about the terms of a contract, it is the duty of

the court to pass upon its validity and effect. Whether, under such proof, the plaintiff has or has not made out a cause of action, is for the court to decide; and if the uncontradicted evidence of the terms of the contract is not sufficient to show the plaintiff's right to recover, the case cannot be strengthened by submitting the evidence to a jury to ascertain the intentions of the parties making it. Where the evidence leaves the terms of the contract or any other fact in doubt, then the facts must be found by the jury; but I do not understand this rule to extend to a case where the construction of a contract is difficult, if there is no conflict in the evidence.

I do not, however, think this question to be material in this case, because, in my opinion, no title to the property ever passed to the plaintiff. The contract was for the sale, by plaintiff to Russell, of a lot of soap and candles, to be paid for in part by candles in Russell's possession. Payment, I conclude, is never to be made until delivery of the article purchased, unless by express agreement. There was no such express agreement in this case; on the contrary, the contract was, to sell the soap and candles, and to take pay part in candles at a fixed price and part in cash. The plaintiff had no more right to the candles than to the cash in advance, and, until delivery of the whole property sold by the plaintiff, he had no right to demand payment, whether in cash or candles. The purchaser had a right to elect whether, on delivery of part, he would pay in part or not; and if he so elected to pay in part, he had an equal right to elect whether such payment should not be in cash. But a delivery by the plaintiff of a part of the goods sold did not vest in him the title to the goods he was to receive in part payment; and especially so, when it is apparent that the goods delivered by the plaintiff were far less in value than the goods to which he claims title in consequence of such delivery. It could not be urged, with any reason, that a delivery of one box of soap, under that contract, would vest in the plaintiff the title to all the twenty-five boxes of candles, and yet there is no more reason for such change of title in the one case than in the other. It might be said that the remark made

by Russell, to send down some soap and take the candles away, was an agreement to deliver them in advance. That remark was after the contract was concluded, and formed no part of it. If it had been carried out by actual delivery, the title would have passed ; but it was no part of the contract, and produced no change of title until such delivery was complete.

The subsequent offer to deliver to Dimmick was no tender to Russell, and no act was afterwards done to complete the sale, or to entitle the plaintiff to a delivery of the candles by Russell ; and, before that offer was made, even if it had been sufficient, the title to the damaged candles had been transferred by Russell to his assignee and by the assignee to the defendants.

I do not see how, from the evidence in the cause, the jury could find any amount as respects the quantity of candles which were so claimed by the plaintiff. The complaint fixes the quantity at twenty-three boxes, but every allegation therein is denied by the answer, and there is not a particle of evidence to show that the quantity in Russell's possession was twenty-three boxes, or that they contained 1,177 lbs. It may be, however, that on the trial such value was conceded.

The dismissal of the complaint was proper, and the judgment should be affirmed.

BRADY, J., concurred in the opinion of Judge Ingraham.

Judgment affirmed.