Coykendall agt. Eaton.

# SUPREME COURT.

## Peter Coykendall, respondent, agt. Nathan P. Eaton, appellant.

Where a person is employed by an innkeeper for the purpose of receiving robes, cushions, whips, &c., during one night at a ball or dance, and where one of the guests towards the close thereof, received his robes, whip, &c., and with his horse and carriage left for home, but within an hour afterwards perhaps, returned to the hotel, and carried in the robe and cushion and handed them to the same clerk, who was still there employed, and told him,

"That he (the former guest) had been tipped over, and these things would have to remain there two or three days or until he could find his horse at any rate, and asked the clerk if it would be all right, and he (the clerk) said it would be."

In an action subsequently brought by the father of the guest against the landlord to recover the value of the robe and cushion which had been lost—it being conceded that the landlord knew nothing of their being left at his house—and the quoted statement above being all the evidence there was on the subject:

*Held*, that the charge of the judge, that under the circumstances, defendant was bound to put the clerk on the stand as a witness, to make such explanation as he could, and in the absence of such explanation, the jury must find for the plaintiff, unless the property was left with the clerk pursuant to a special agreement, was error. The clerk was interested in swearing the liability on the defendant.

That the property was left with the clerk to be kept for two or three days, or until the horse was found was sworn to as above quoted, and there was no other evidence on the point. On this evidence the only question was whether the clerk was acting within the scope of his authority as agent when he made the contract, and this was a question of law. The charge of the court, therefore, that the defendant was not liable if there was a contract between the clerk and the former guest, but if there was no such contract, defendant was liable, was error.

*Onondaga General Term, November,* 1871.
*Before* Mullin, *P. J.,* Johnson *and* Talcolt, *JJ.*

R. K. Gardener, *for appellant.*
T. R. Fuller, *for respondent.*

*By the court,* Mullin, P. J.—On the afternoon of the 28th of November, 1867, the plaintiff's son borrowed of the

plaintiff, a wolf robe and cushion to be used in a carriage in which the son and a young lady were to ride to a ball at the house of defendant, who kept a hotel or inn at Onondaga Hill, in Onondaga county.

The defendant appointed one Case, to receive whips, robes, &c., &c., brought to the house by persons coming to the ball, place thereon the names of the depositor, and to return the same when he the depositor left the house.

Henry Coykendall when arriving at defendants, carried in, and delivered to Case, the robe and cushion in question in this suit, Case put the young man's name on them, and put them into the room, set apart for the purpose.

Young Coykendall with the lady who accompanied him remained at the ball until at or near its close, when he called for his horse and carriage, received from Case the robe and cushion, placed them in the carriage, and rode away.

Soon after leaving, the carriage was upset, young Coykendall and the lady were thrown out, and the horse ran away, Coykendall thereupon, gathered up the robe and cushion and returned to defendant's house.

On arriving there, he carried in the robe and cushion and handed them to Case who was still employed at the place where robes, &c., were deposited, and told him, " that he (Coykendall) had been tipped over, and these things would have to remain there two or three days, or until he could find his horse at any rate, Coykendall asked him, 'if it would be all right;' and he Case said it would be."

In about a week or ten days after the dance, young Coykendall called on defendant, and asked him, "if he had heard anything about a robe or cushion that was lost there the night of the ball;" defendant replied, none was lost. That he Coykendall got the robe, &c., the second time, and he defendant could prove it. Coykendall by direction of plaintiff, demanded of defendant the robe and cushion, and was told in reply, that he had received it that night.

The defendant had no knowledge, that young Coykendall

left a robe at his house on the night in question. He did not know what became of it, and had nothing to do with it.

The court charged the jury, that the defendant was not liable, if there was a contract between young Coykendall and Case, but if there was no such contract, defendant would be liable. To these parts of the charge, the defendant's counsel excepted.

It appeared on the examination of defendant, that he had not subpœned Case as a witness, but had requested him to attend as such, but he Case had not been in court that day.

The judge charged, that under the circumstances, defendant was bound to put Case on the stand, to make such explanation as he could. In the absence of such explanation, which it appears probable to be within the defendant's power to give, they must find for the plaintiff, unless the property was left with Case pursuant to a special agreement.

The relation of innkeeper and guest never existed between the plaintiff and defendant. Hence, none of the liabilities that result from that relation attached to the defendant. The plaintiff's son was the guest. The father was not entitled to insist on any of the rights belonging to the guest.

We are to consider the property as left in deposit with defendant or with Case, and the defendant as liable for gross neglect only.

The first question then is, with whom was it left, or in other words, was it left with defendant so, as to charge him therefor as bailee?

It was not delivered to the defendant personally. He never saw it, nor had anything whatever to do with it.

If he is charged with the property, it is because it was delivered to and received by his servant or agent under circumstances that bound defendant for the acts of his agent

Case was hired for the night only. His duty was to receive robes, &c., brought by guests coming to the ball, and to deliver them back when the guests left. He had no authority from defendant to receive property for any period of time, beyond that night, or at the longest until the guest who brought it left.

Young Coykendall could not but know from the occasion and the nature of Case's employment, that he Case was acting temporarily in the receipt, and delivery of the robes, &c., of those who attended the ball, and he was, therefore, bound to know, that Case could not make any agreement which would make defendant responsible for property beyond the night.

Had a person gone to defendant on that occasion as a guest, not to attend the ball merely, but to stay an indefinite time, and left with Case a robe to be kept until called for, the delivery to Case might be delivery to defendant so as to charge him with the property if lost.

But young Coykendall was a guest for the ball only, and Case by receiving the property could bind the defendant for its custody for that period of time only.

When young Coykendall left, taking his property with him, his right as guest terminated. When he returned and redelivered the property to Case, it was not delivered to be kept for him as a guest, but as a matter of favor for his convenience and accommodation.

The offer to Case was, to leave the property not while he, young Coykendall, remained a guest, but for two or three days, or until he found his horse.

Case had no authority to make such a contract, and when made, did not bind the defendant.

Would it be claimed, that defendant would be liable if young Coykendall, not being a guest, had left his horse with defendant's porter under just such an arrangement as was made with Case?

If the agreement was binding on defendant, he became

responsible not only for loss resulting from his own negligence, but for that of his servants, and if stolen by his servants, he became responsible for the loss.

It would be most unjust to permit a servant to bind his master by such a contract (*Lithridge* agt. *Phillips*, 2 *Starkie*, 544; 1 *Waite, L. & P.*, 308, 9 & 10.)

The court below submitted to the jury the question, whether a special contract was entered into, for the custody of the property, between young Coykendall and Case, and they were instructed, that if such a contract was made, defendant was not liable. The jury having found for the plaintiff, must have found that no such contract was made. It follows, that if any contract was made in reference to the custody of the property, it must have been made with Case, as defendant's agent, and defendant was bound by the contract.

There was no question for the jury as to whether a contract was made with Case, the question was whether it was made with Case as agent of defendant. If it was so made and Case had authority to bind the defendant, the plaintiff was bound to recover, otherwise not.

There was no conflict of evidence as to what was said and done when the robe, &c., was left with Case the second time. That Case acted for the defendant on the occasion of receiving the robe, &c., is conceeded on all hands. That he was employed for and during the ball to receive property brought by those attending it, is undisputed, and there is no proof or claim that he had any other authority.

That the property was left with him to be kept for two or three days, or until the horse was found, was sworn to by young Coykendall, and there is no other evidence on the poi..t.

On this evidence the only question was whether Case was acting within the scope of his authority when he made the contract.

When there is no dispute about the authority conferred

upon an agent, the question whether an act done is within the power, is a question of law for the court, precisely as it would be if the power was in writing.   The court, and not the jury, must construe it so as to determine whether the agents acts are authorized by the power (*Latham* agt. *Westevelt,* 26 *Barb.,* 256 ; *Chapin* agt. *Potter,* 1 *Hilt.,* 366).

If it was for the jury to say whether Case acted within the scope of his agency in making the contract for the custody of the property, it was not submitted.   That, however, is not material.   The question was one of law, and was erroneously decided by the court, if the court can be said to have decided it, and the finding of the jury, if they can be said to have found it, is against the evidence (*Milbank* agt. *Dennistoun,* 21 *N. Y.,* 386).

The instruction to the jury that they must find a verdict for the plaintiff because defendant did not call Case, unless they found that the goods were left with Case pursuant to a special agreement, was erroneous.

. Case was interested in swearing the liability on the defendant, and . it would be monstrous to compel defendant to call him and thereby afford him an opportunity to charge him, or have the jury told they must find a verdict against him if he did not.

In 1*st  C. & Hs'. Notes,* 310, after laying down the rule, that if it appears that a party can procure evidence that will remove the effect of circumstantial evidence which tends to criminate, and he does not produce it, a presumption of guilt is raised against him, adds:   Yet, if it appears, that the only explanatory evidence is of a suspicious kind or character, as that the witness whose absence is insisted on be interested in the question against him, this takes away the force of the presumption.

Upon both of the foregoing grounds, I think, the charge was erroneous, the judgment must, therefore, be reversed, and a new trial granted, costs to abide the event (*See this case in* 37 *How.,* 458, *and* 40 *How..* 266.)

CORRECTION BY JUDGE BALCOM.

The following case is reported in 42 *How.*, 131. The head notes seem to be erroneous—and there is a bad error on p. 132. Please correct same as follows: