# Minge & Co. *v.* Barrett Bros. Shipping Co.

### Assumpsit.

(Decided January 11, 1916. Rehearing denied February 1, 1916. 70 Souht. 962.)

1. **Account; Stated; Evidence.**—The evidence examined and held to show an express agreement between the parties that the amounts held back in the purchase of lumber were to cover differences in the quantity as well as in the quality of the lumber delivered.

2. **Same; Documentary; Market Report; Preliminary.**—In the absence of proof that the daily reports upon which consolidated reports were based and made up, were correct, evidence going to show that the amount of lumber specified in the various receipts of another company based on a consolidated report of the daily reports for the purpose of showing that such an amount of lumber was actually placed in a shed for the account of defendant, was incompetent.

(Thomas, J., dissents in part.)

[Minge & Co. v. Barrett Bros. Shipping Co.]

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by the Barrett Brothers Shipping Company against C. H. Minge & Company, the defense being set-off. Judgment for plaintiff and defendant appeals. Reversed and remanded.

BESTOR & YOUNG, for appellant. GEORGE B. CLEVELAND, for appellee.

THOMAS, J.—The action was by the appellee, Barret Bros. Shipping Company, against the appellants, C. H. Minge & Co., on an account and on an account stated. The defendants pleaded the general issue and set-off. The case was tried by the court without the intervention of a jury, and judgment was rendered for the plaintiff, appellee here, to which an exception was reserved by the defendants.

It appeared that the parties had been having mutual dealings for some time, the defendants advancing and lending money to the plaintiff, and the plaintiff selling and delivering lumber to the defendants under divers contracts between them entered into from time to time. At the conclusion of their dealings a difference in account was found to exist between them, each party claiming that the other owed it a balance, which they were never able to reconcile or adjust between themselves, hence this suit by the plaintiff, declaring on its account.

The principal difference in the accounts between the two arises over an item of $1,142.94 charged to defendants in plaintiff's account against them, but not credited on defendants' account against plaintiff, and which item defendants deny that they owe. If the item is a correct charge in plaintiff's favor, then it is conceded that the balance, after stating the account between the parties, would be in plaintiff's favor, otherwise in defendants' favor, regardless of in whose favor might be found the other disputed items, which are few and comprise but small amounts. This item of $1,142.94 was an alleged balance claimed by plaintiff to be due it for lumber alleged to have been sold and delivered by it to the defendants, but which the defendants deny ever having received.

It appears that the parties had entered into a contract whereby the plaintiff agreed to sell and the defendant to buy all the

kiln dried saps, or lumber, up to 1,000,000 feet, and of named dimensions, that the plaintiff might manufacture; the price agreed on being $20 per 1,000 feet for a certain quality or grade, and proportionately less where the saps or lumber did not come up to that standard of quality or grade. There is some conflict in the evidence as to the place at which, under the contract as last modified, the plaintiff was to deliver to the defendant said lumber; but for purposes here, we will assume the correctness of defendants' contention and say that it was to be delivered by plaintiff to defendant at "Holt Lumber Company's dry shed." Still, if the defendant accepted a delivery as complete elsewhere, it will be held to have waived this requirement of the contract, and cannot, in such event, escape a liability for the purchase price. The law is well settled that delivery by the seller to a warehouseman, carrier, or other person as bailee for the purchaser, with the consent or by the direction of the purchaser, even though the place of delivery be different from that named in the contract, is a sufficient delivery under the contract, since the purchaser, by consenting to the delivery to another person for him and at a place other than that named in the contract, thereby waives the stipulations of the contract in this particular, and cannot be heard to say that he never received the articles, although it may appear that, after the articles were received by such other person as his bailee, they were lost before being delivered to him by the latter.—13 Am. & Eng. Ency. Law (2d Ed.) 726; *Bradford v. Marbury*, 12 Ala. 520, 46 Am. Dec. 264.

It appears here without dispute that the lumber (337,890 feet), the balance on the purchase price of which comprises the $1,142.94 item in plaintiff's account and for which balance defendant denies liability, was all delivered by the plaintiff to the Holt Lumber Company, a third party, at or near its dry kiln; but it appears from defendants' evidence that when the Holt Lumber Company subsequently delivered this lumber to them (the defendants), at the dry shed of said company (the place of delivery before assumed as fixed by the contract between plaintiff and defendant), there was short 42,407 feet. Around this shortage centers the chief controversy between the parties, since the charge of $1,142.94 in plaintiff's account, and for which item defendants deny liability, is predicated upon the contention by plaintiff that, although the amount of lumber, when delivered by the Holt Lumber Company, said third party, to defendants at

the former's dry shed, may have been short 42,407 feet, yet that, since the full amount had been delivered by plaintiff to said Holt Lumber Company at or near its dry kiln—as appears without dispute—the defendants are liable, notwithstanding the Holt Lumber Company may have lost 42,407 feet of it before delivering it to defendant at their dry shed. The settlement of this controversy depends upon the answer to this question of fact: "Whose agent or bailee was the Holt Lumber Company—defendants' or plaintiff's?" If defendants', then defendants are liable; otherwise not. The lower court, without the intervention of a jury, by rendering judgment for plaintiff, impliedly found that said Holt Lumber Company was defendants' agent, and we find in the record nothing to justify us in disturbing that finding, but much to sustain us in upholding it.

It appears without dispute that the said Holt Lumber Company operates for hire a public sawmill, dry kiln, and lumber shed, in which latter is stored and kept by said company, until removed by the owner, the lumber that is sawed by it out of stock timber brought by others to the mill and after it has been cured or dried in the dry kiln. The kiln is only a short distance from the mill, while the dry shed is only a short distance from the kiln. The contract between plaintiff and defendants bound plaintiff, we have assumed, to deliver at said dry shed the lumber sold defendants by plaintiff; but if defendants accepted as sufficient the delivery by plaintiff to the Holt Lumber Company at the kiln, as we think it did, then they waived a delivery at the shed, and the Holt Lumber Company became at the kiln the agent or bailee of defendants; consequently, whatever part of the lumber may have been lost between the time the plaintiff made the delivery to the Holt Lumber Company at the kiln and the time such company subsequently delivered the lumber to the defendants at the shed the defendants are as much liable for it, to the plaintiff as they are liable for that actually delivered to them by said Holt Lumber Company at the shed.—Authorities supra.

It appears that the plaintiff, for the purpose of having its stock timber manufactured into the lumber that it was to sell and deliver to the defendants under the contract before mentioned, brought such stock timber to the sawmill of said Holt Lumber Company, where, at plaintiff's expense, it was manufactured into lumber by said company as plaintiff's agent, but that after it was so manufactured the number of feet were

counted as it was put on trucks for carrying into the dry kiln, a short distance, where it was to, and did, remain on said trucks until cured or dried in said kiln, when it was to be removed into the dry shed, another short distance, and stored and kept by said Holt Lumber Company until removed by the owner; that from time to time, as the lumber was so manufactured and counted and put on trucks for carrying into the dry kiln, the Holt Lumber Company issued to the plaintiff receipts therefor, stating in the receipts that the lumber (describing it and giving the number of feet, but not the grade). was received from Barret Bros. Shipping Company, the plaintiff here, to be properly kiln-dried and to be stored in the said shed for the account of C. H. Minge & Co., the defendants here, and subject to the latter's order, and that the same was free from any lien of the Holt Lumber Company, and that said company recognized the absolute title of C. H. Minge & Co., the said defendants, in and to the said lumber.

It further appears that these receipts, after being issued to the plaintiff, were taken by it, from time to time, as issued, to the defendants, who accepted the same and paid the plaintiff for the number of feet of lumber as represented by the receipts, paying plaintiff at the contract price of $20 per 1,000 feet, but retaining $1 per 1,000 feet in some instances and $2 per 1,000 feet in other instances, to cover differences, if any, that might later be found to exist when defendants' inspector should subsequently inspect the lumber, which inspection was to be done at such time as defendants should later see fit to have the lumber loaded from Holt Lumber Company's dry shed into vessels or barges for shipment. The total number of feet of the lumber so delivered by plaintiff to the Holt Lumber Company for carrying into said kiln, as the evidence without dispute shows, was 337,890 feet, and for this amount plaintiff received pay from defendant at the contract price, less the sums retained out of it by defendant as above stated and for the purposes stated; but the defendants' evidence tends to show that the Holt Lumber Company only delivered to them when they (defendants) sent to have the lumber inspected and loaded from said Holt Lumber Company's dry shed onto barges a total number of 295,483 feet—leaving the mentioned shortage of 42,407 feet.

If short, the part short was lost or converted by the Holt Lumber Company, or some person for whose acts it was respon-

[Minge & Co. v. Barrett Bros. Shipping Co.]

sible, after the lumber was turned over to it by plaintiff at the kiln, and before it was delivered to defendants at the dry shed, because, as said, the evidence shows without dispute that plaintiff did turn over to said Holt Lumber Company the full amount of 337,890 feet, and that plaintiff had nothing whatever to do with it thereafter.

And, although it be, as defendants' counsel contends, that defendants likewise had nothing to do with it in the sense that they did not take physical charge of it until it was delivered to them at the shed, yet constructively, and in law, it was in their charge and keeping from the time the Holt Lumber Company issued the receipts for it in their name and they accepted them. By such issuance by them and acceptance on their part when tendered them by the plaintiff, the Holt Lumber Company became their bailee and ceased to be the bailee of the plaintiff; and if any of the lumber was lost by them before or after it reached the shed, they, and not plaintiff, are responsible to the defendant. The case is analogous to that where a cotton warehouseman (or other bailee), upon delivery to him of cotton by one person issues, with his consent, a receipt to a third person for it, who accepts it. The delivery and acceptance of the receipt is a symbolic delivery and acceptance of the cotton represented by it; and, in the absence of fraud or mistake, whereby the receipt is made to show more cotton than was really delivered, the vendor is not responsible to the purchaser for any shortage in the articles. Of course, if, by fraud between the vendor and the warehouseman, or by mistake on the latter's part, the receipt should happen to show more articles, or articles of greater weight, than were actually delivered to the warehouseman, and the vendor should receive from the purchaser of the receipt pay according to the number and weight of the articles as shown by the reecipt, it may be that the vendor would be liable to the purchaser for the difference between what the receipt represented and what had been actually delivered to the warehouseman. But where, as here, there is no dispute but what the vendor, plaintiff here, delivered to the bailee, the Holt Lumber Company, the full amount of the lumber called for by the receipt, then the defendants, as purchasers, cannot hold plaintiff, as seller, responsible for any shortage arising after the Holt Lumber Company became the bailees of the defendants, which happened when the latter accepted the receipts. By such acceptance, the title to the prop-

erty passed into the defendants, and the plaintiff had no right of further control over it. The fact that at the time of the acceptance of the receipts by the defendants, they held back out of the purchase price of the lumber certain sums, as before mentioned, to cover differences that might be subsequently found on inspection by defendants' inspector to exist, is not, in the absence of more, any evidence that it was held back to cover differences in quantity as well as in quality. The receipts themeslves show the quantity but not the quality or grade of the lumber, and the defendants, at the time of accepting them, settled with the plaintiff according to the quantity of lumber as so disclosed by the receipts, thereby showing by implication that they were relying on the Holt Lumber Company as to the quantity, having their receipts therefor; but by reason of the fact that the receipts did not show the grade or quality of the lumber, and by reason of the further fact that defendants, when settling with plaintiff for the quantity so shown by the receipts, retained or held back in each instance a certain sum out of the purchase price to protect themselves against differences that might subsequently be found to exist, it must be inferred, unless a contrary express agreement be shown by defendants, that the sum so held back was held back to cover differences, without stating expressly what differences, it must be held that the understanding between the parties was that it was to cover differences in grade only, although it may appear that defendants had at the time an unexpressed intention that it was held back to cover differences in quantity as well as in quality or grade. Their intentions to this effect would avail nothing, unless expressed at the time and assented to by plaintiff. We have examined carefully his evidence on this point, and while it is our opinion, which is at variance with the contention of his counsel, that his testimony stating that there was an agreement that the sum held back was held back to cover differences in quantity as well as in quality, amounts to nothing more than the statement of a conclusion of the witness, failing as the testimony does, to state either that such agreement was an express one, or to state what was actually said, if anything, between the parties so that the court might determine whether there was an express one; and while it is also our opinion that his other testimony on this point amounts, when properly analyzed, only to a statement that it was his intention that the amount held back was held back to cover differences both in quantity and quality,

yet, even if we assume that he testified that there was an express agreement to that effect, still we should not, on the record before us, be willing to say, or be justified, we think, in saying, that the lower court erred in finding to the contrary, which, impliedly, it did do by rendering judgment for the plaintiff.

Nor is there any merit in the contention that the plaintiff admitted on cross-examination that there was such an agreement. The answers of the witness, upon which this contention is predicated, were as follows, in response to the following questions propounded on cross-examination, to-wit:

Question: "What was discussed with you, with Minge & Co., if they did not pay you in full for the amount shown on the receipts?" Answer: "It was discussed, they wanted a sufficient margin in hand to cover any differences." Question: "They did not hold out anything to cover any differences in the amount of lumber, will you swear to that—will you swear that the margin held out by Minge & Co. was not intended to cover not only quality, but quantity?" Answer: "I wouldn't swear to that."

Interpreting these answers in the light of the other testimony of the witness and in the light of the questions calling them forth, we understand them to mean that the witness understood that the agreement was that the sum was held back to cover any differences, but that it was not stated what differences, and that the witness understood, as he, for reasons pointed out, had a right to understand, in the absence of an express contrary statement by defendants at the time, that it was held back to cover only all differences in grade or quality, but that the witness would not swear but what defendant intended that it should also cover any differences in quality. It may be that defendant did so intend, but if his intentions in this respect were kept secret or left unexpressed, plaintiff could not swear one way or the other as to what they were, and refrained, as we understand him, from attempting to do so. Whatever may have been defendants' intentions in this particular, if they were not disclosed at the time, it cannot be said that they were also the intentions of the plaintiff; hence they cannot constitute an agreement or contract. It is not made to satisfactorily appear that the lower court erred in findng, in effect, by rendering judgment for plaintiff, that such intentions were not expressed, and that, not being expressed, the plaintiff had a right to conclude that the agreement was that the sum held back by defendants was to cover only differences in grade.

[Minge & Co. v. Barrett Bros. Shipping Co.]

We are likewise of opinion that the court did not err in rejecting the item of $105 in defendants' account which was claimed to be due defendants by plaintiff for premiums paid out by defendants in insuring the lumber during the time it remained in the shed before being shipped out by defendants. It was, as before seen, during all such time, the property of defendants, and plaintiff was under no obligation to pay the insurance on it, in the absence of an express agreement to that effect, which was not shown.

The other items of difference between the parties were inconsequential, and need not be discussed. Suffice it to say that we have not been convinced that the court erred as to the amount of judgment rendered for plaintiff, or in any other way that would justify a reversal of the case; consequently that judgment is affirmed.

Affirmed.

## ON REHEARING.

PELHAM, P. J.—(1) On a consideration of this case on application for rehearing, the writer and Judge Brown have arrived at the conclusion that the evidence, as set out in the bill of exceptions, fairly and reasonably construed, shows without material conflict that there was an express contract or agreement between the parties to the effect that the amounts held back were to cover differences in quantity as well as in the quality or grade of the lumber delivered. A majority of the court entertaining this view is of the opinion that the application for rehearing should be granted, and a reversal of the case should be had, and the same is ordered. Upon this proposition, Judge Thomas adheres to the views as expressed in the opinion written by him on the original submission.

(2) The entire court is of the opinion, and so expressed its views in consideration of the fact that there is to be another trial of the case, and for the guidance of the court below on another trial; that the trial court erred in refusing the defendants' motion to exclude that part of plaintiff's evidence going to show that the amount of lumber specified in the various receipts of the Holt Lumber Company, based on a consolidated report of the daily reports, which was admitted in evidence as going to show that this amount of lumber was actually placed in the shed for the account of Minge & Co. This opinion is based upon the

[American Workmen v. James.]

idea that the consolidated report of the daily reports was not competent evidence in the absence of proof that the daily reports upon which it was based and made up were correct. And oral testimony based solely on such consolidated report would be, of course, subject to the same objection.

Reversed and remanded.